```
             IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF ARKANSAS
                       HARRISON DIVISION
```

BLUEWATER YACHT SALES, INC.                              PLAINTIFF

    v.                Civil No. 07-3039

LIBERTY COACH, INC.
and WEBASTO PRODUCT
NORTH AMERICA, INC.                                     DEFENDANTS

## MEMORANDUM OPINION & ORDER

Before the Court are the Motions for Summary Judgment by Defendant Webasto Product North America (Doc. 40) and Defendant Liberty Coach, Inc. (Doc. 47). For the reasons reflected below, both Motions are **DENIED.**

### A. Standard of Review

Summary Judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden of proof is on the moving party to set forth the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The Court must view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574 (1986). Once the moving party has met its burden, defeating summary judgment requires "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### B. Background & Facts

For purposes of summary judgment, the Court views the evidence

and recites the facts in the light most favorably to the non-moving party.

This litigation arises from a motor coach fire on May 12, 2006 at the Buses and Bikers Rally in Blue Eye, Arkansas. Plaintiff Bluewater Yacht Sales owned the coach since its purchase in December 2005. The coach was not extensively driven before the fire and had received only minor maintenance following its purchase. Curry Hall, the President of Bluewater was the driver; his wife Judith Hall was the only other occupant. The Halls arrived at the rally on May 8, 2006, and remained until the fire on May 12. While the coach was parked at the rally, Liberty Coach technicians serviced a portion of the coach not connected to the source of the fire.

Around 3:00 a.m. on May 12, Curry Hall turned on the auxiliary heat in the coach, which was controlled by a heater manufactured by Defendant Webasto, and then he returned to bed. At some later point, an alarm woke Mr. Hall, and he and Mrs. Hall were able to escape the burning coach unharmed. Upon exiting the coach, Mr. Hall noted that the rear left was on fire, and the fire eventually engulfed the entire coach.

The post-fire investigations and witness accounts agree that the fire began near the rear axle area on the driver's side and spread to encompass the entire vehicle. SEA Ltd investigated and issued a report, authored by Robert T. Juergens and Thomas E. Saunders, that identified seven pieces of equipment as proximately

located near the source of the fire. Their analysis eliminated six of the seven as potential causes of the fire, leaving only the fuel lines and diesel fuel piping that connected the Webasto heater to the motor coach's fuel system.

The Webasto heater has two fuel attachments, an attachment where fuel enters under negative pressure, and a return attachment where excess fuel exits under positive pressure. The attachments, when properly assembled, include a banjo nut assembly and a barb fitting. The hoses carrying fuel to and from the heater attach via the barb fitting which is connected to the heater itself via the banjo nut assembly. A properly configured banjo nut assembly contains two washers, one on each side of the banjo nut, that help to seal the banjo nut and prevent fuel leaks.

The actual installation of the fuel assembly was carried out by Liberty Coach. The SEA Report contains photographs of the fuel fitting after the fire that reflect the placement of two washers on one side of the banjo nut and none on the other. The SEA report also shows a properly installed banjo nut assembly, with washers on both sides. The Webasto Owners manual contains an illustration showing a proper installation as having a washer on each side of the banjo nut.

The SEA report noted a specific defect in the return fuel assembly of the Webasto heater. Both washers were on the same side of the banjo nut assembly. The report did not say that the fuel lines and diesel piping caused the fire, but that it was the only

piece of equipment near the source of the fire that could not be ruled out as a cause of the fire. The SEA report stated that "a small leak at a fitting joint could, over time, allow a small quantity of fuel to accumulate in the heater compartment in liquid or vapor form." The results of the SEA report are consistent with the results of the investigation by Randy Van Zant, Inc., who performed an earlier, less detailed investigation into the fire that identified the coolant heater area as the source of the fire.

The deposition of Jesse Gomez reflects that the supply and return come pre-attached to the Webasto heater. The washer came misinstalled when Liberty received it, and when Liberty employees installed the heater, they did not move or replace the washers, although they did change the orientation of the fittings. After moving the fittings, they did not replace the washers. In addition, there is no indication that any Liberty employee was concerned with the torque used to tighten the assembly once Liberty employees adjusted it.

**C. Discussion**

### 1. Strict Products Liability

Arkansas's Products Liability statute, found at Ark. Code Ann. § 4-86-102, requires three elements for strict products liability: (1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product; (2) The product was supplied by him or her in a defective condition that rendered it unreasonably dangerous; and (3) The

defective condition was a proximate cause of the harm to a person or to property. The Arkansas Supreme Court interprets the second element to contain two parts; the product must be both defective and unreasonably dangerous. *See O'Mara v. Dykema*, 328 Ark. 310, 318, 942 S.W.2d 854, 858-59 (1997). Arkansas's statute further defines "Unreasonably dangerous" to mean

> that a product is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquires or uses the product, assuming the ordinary knowledge of the community or of similar buyers, users, or consumers as to its characteristics, propensities, risks, dangers, and proper and improper uses, as well as any special knowledge, training, or experience possessed by the particular buyer, user, or consumer or which he or she was required to possess.

Ark Code Ann. § 16-116-102(7)(A). Ark Code Ann § 16-116-102 and § 4-86-102 are meant to be read together. *See Lee v. Martin*, 74 Ark.App. 193, 198, 45 S.W.3d 860, 863-64 (2001). The mere possibility that a product is defective is insufficient, there must be evidence from which a jury can conclude that it is more probable than not. *Higgins v. General Motors Corp.*, 287 Ark. 390, 392, 699 S.W.2d 741, 743 (1985).

In this case, it is uncontroverted that both Liberty and Webasto are engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product. With the misplaced washer on the fuel fitting, the Plaintiff has identified a specific product defect. Based on the SEA report, a reasonable jury might determine that the fuel fitting could leak, that a leak

AO72A
(Rev. 8/82)

could result in a fire, and thus the motor coach was unreasonably dangerous. A reasonable jury might further conclude that the ensuing fuel leak proximately caused the fire that resulted in Bluewater's damages. Webasto argues that the language of the SEA report, which ruled out the Webasto heater itself as a cause of the fire, but listed a fuel leak as a possible source of the fire is insufficient to base a finding of proximate cause. It is true that a mere possibility is insufficient to base a finding of proximate cause. *See Arthur v. Zearley*, 337 Ark. 125, 135-36, 992 S.W.2d 67, 73 (1999). However, the elimination of other possible causes allows Bluewater to survive summary judgment as to both Defendants. Regarding strict products liability, Defendants' Motions for Summary Judgment are DENIED.

### 2. Negligence

A negligence action requires the showing of a duty owed by the defendant, a breach of that duty, damages sustained by the plaintiff, and the defendant's negligence was the proximate cause of the damages. *Wagner v. General Motors Corp.*, 370 Ark. 268, 272-73, 258 S.W.3d 749, 753-54 (2007). Manufacturers have a duty to use ordinary care in the assembly of their products. *See International Harvester Co. v. Land*, 234 Ark. 682, 689, 354 S.W.2d. 13, 18 (1962). As a matter of Arkansas law, one of the limits on the duty of ordinary care is that the risks to be guarded against must be reasonably forseeable. *Coca-Cola Bottling Co. of Memphis, Tenn. v. Gill*, 352 Ark. 240, 254-55, 100 S.W.3d 715, 724 (2003).

AO72A
(Rev. 8/82)

Forseeability of the exact harm or the specific victim of the harm is unneccessary; the defendant needs to be able to reasonably foresee an appreciable risk of harm to others. *Id.* at 255, 100 S.W.3d at 715. No privity is required to bring an action for breach of warranty or for negligence. Ark. Code Ann. § 4-86-101.

In this case, as a matter of law, Webasto and Liberty, as manufacturers, both owe a duty of ordinary care to Bluewater, the purchaser and owner of the coach. As to proof of a breach of the duty, there is no genuine dispute that the washers on the fuel return fitting attached to the Webasto heater were not properly installed. It is also clear that Liberty employees adjusted at least one of these fittings and did not replace any of the washers. The deposition testimony of James Cowen serves as evidence that a person exercising ordinary care would have replaced the washers after adjusting the position of a fuel fitting. It is forseeable that failing to correctly install or replace washers that help seal a fuel fitting could result in a fuel leak and fire. A reasonable jury might conclude that the misinstallation of the washer is a breach of the duty of ordinary care and/or that failure to replace the washers after re-positioning is a breach.

Liberty argues that it was under no duty to change the washers after adjusting the fuel fitting and points to an email exchange between a Webasto engineer and another customer concerning repositioning the fuel fittings. The Webasto engineer states that "[t]he only thing is to make sure to tighten them down to the

AO72A
(Rev. 8/82)

correct torque. That value is listed below." Although that email serves as evidence that exercise of ordinary care does not mean that the washers need to be replaced, it also serves as evidence that the exercise of ordinary care requires care and attention to the tightness of the attachment. In his deposition, Jesse Gomez, the plumber for Liberty who installed Webasto heaters, indicated that he was unfamiliar with the torque specification for a return or supply on a Webasto heater. A jury might also consider this a breach of the duty of ordinary care. Finally, a jury might conclude that either problem with the washers or an improperly tightened fuel line could result in a fuel leak that was the proximate cause of the fire and Bluewater's damages. Summary Judgment on the negligence claims against both Defendants is therefore DENIED.

### 3. Breach of Implied Warranty

Liberty argues that since Bluewater has no direct contractual relationship with Liberty, Summary Judgment on Bluewater's Breach of Contract claims against Liberty is appropriate. Liberty concedes that privity is not required in a cause of action for breach of implied warranty, but asserts that Bluewater cannot maintain a breach of contract action because privity is required. Bluewater's Third Amended Complaint pleads Breach of Warranty and Breach of Contract as separate counts. The Breach of Contract count contains allegations that give rise to causes of action based on merchantability and fitness for a particular purpose. However, breaches of implied warranties are a sub-set of breach of contract

actions. *See Cartillar v. Turbine Conversions, Ltd.*, 187 F.3d 858, 860 (8th Cir. 1999) (describing a warranty as part of a contract); *See also* Black's Law Dictionary 1618 (8th ed. 2004) (defining a warranty in the context of contracts). As Liberty has conceded, privity is not required in an action for breach of warranty. Ark. Code Ann. § 4-86-101. Since a breach of warranty claim is a breach of contract claim, and privity is not required for a breach of warranty, lack of privity is not fatal to Bluewater's breach of contract claim in this case.

Liberty also claims that Bluewater failed to give a notice of defect. In Arkansas, once the buyer accepts a tender, the buyer must "within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Ark Code Ann. § 4-2-607. Plaintiff's Response indicated a number of documents that reflect notice to Liberty, and Liberty did not pursue this argument in its Reply. As to the breach of contract claims, Liberty's Motion for Summary Judgment is DENIED.

## D. Conclusion

Based on the above, Defendants' Motions for Summary Judgment (Doc. 40 and Doc. 47) are **DENIED**. This case remains set for jury trial on September 14, 2009.

IT IS SO ORDERED this 12th day of June, 2009.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge